# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20275

United States Court of Appeals
Fif h Circuit

**FILED**

October 5, 2017

Lyle W. Cayce
Clerk

JINSUN, L.L.C.,

     Plaintiff - Appellant

v.

ALIDAD MIRESKANDARI,

     Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-1238

Before DAVIS, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

     Plaintiff-Appellant Jinsun, L.L.C. appeals the district court's judgment in favor of Jinsun and against Defendant-Appellee Alidad Mireskandari ("Alidad") following a jury verdict on the ground that the district court erred by awarding the lower of two damages amounts found by the jury. For the reasons set forth below, we affirm.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20275

Jinsun owns shares of Luxeyard, an e-commerce company founded and chaired by Amir Mireskandari, Alidad's brother. In early 2012, Amir asked Jinsun to sell some of its Luxeyard shares to Alidad. Jinsun agreed to the sale and entered into an oral stock purchase agreement with Alidad ("the stock agreement") in April 2012. The stock agreement provided that Jinsun would sell 430,000 shares of Luxeyard stock to Alidad for $56,000. Alidad received the shares from Jinsun and subsequently sold them to another party for a total of $556,200, but he never paid Jinsun for the shares.

Jinsun brought this suit in Texas state court against Alidad asserting breach of contract (among other claims) and seeking money damages. Alidad removed the action under diversity jurisdiction,[1] and Jinsun's breach of contract claims eventually proceeded to a five-day jury trial commencing on September 28, 2015. In addition to asking the jury whether the parties had entered into the stock purchase agreement and whether Alidad had breached it, the district court submitted two damages questions relating to the agreement. The first asked the jury to find "[t]he difference between the purchase price and the amount, if any, that Alidad paid." The second asked the jury to find "[t]he difference between the value of the shares Alidad received and the amount, if any, that Alidad paid."

After finding that the parties had entered into the stock agreement and that Alidad had breached it, the jury answered these damages questions with $56,000 and $556,200, respectively. After the jury returned its verdict, the district court ordered Jinsun to make an election. Unsurprisingly, Jinsun elected for the larger sum. However, the district court's final judgment limited

---

[1] 28 U.S.C. §§ 1332 and 1446.

No. 16-20275

Jinsun's damages on the stock agreement to the smaller sum—$56,000—without further explanation.

Jinsun timely appealed the district court's damages award, arguing that it was entitled to the larger award.[2] Jinsun argues that in awarding the lower damages award, the district court focused only on one type of breach of contract remedy but ignored the other two. Jinsun points to non-binding Texas authority explaining:

> American law has traditionally recognized three damage measures for breach of contract: expectancy, reliance, and restitution. Expectancy damages award the benefit of a plaintiff's bargain; reliance damages compensate for the plaintiff's out-of-pocket expenditures; restitution damages restore what the plaintiff has conferred on the defendant.[3]

Essentially, Jinsun claims that the lower award of $56,000 represented the expectancy damages, while the higher award of $556,200 represented either its restitution or reliance damages. (Because Jinsun had no out-of-pocket expenditures here, we fail to see how Jinsun could be entitled to reliance damages at all.) Jinsun argues the higher award is permissible because the smaller expectancy damages do not fully compensate Jinsun for its losses on the stock agreement. Jinsun claims that it only agreed to sell Alidad the shares at a price far below market price because, as part of the stock agreement, Alidad also agreed to somehow bring value to Luxeyard,[4] which would inure to Jinsun's benefit because Jinsun continued to retain a significant stake in the company. Accordingly, Jinsun argues that the $56,000 award does not even come close to compensating Jinsun for its losses under the stock agreement

---

[2] We have appellate jurisdiction under 28 U.S.C. § 1291.

[3] *Quigley v. Bennett*, 227 S.W.3d 51, 56 (Tex. 2007) (Brister, J., concurring in part and dissenting in part) (footnotes omitted).

[4] Alidad apparently had ties to Wall Street investment banks, and Amir told Jinsun that Alidad could draw on these ties to help raise capital for Luxeyard.

No. 16-20275

because it not only expected to receive Alidad's payment for the shares but also Alidad's efforts to aid Luxeyard and, by extension, Jinsun.

In response, Alidad argues that, under Texas law, damages for breach of a simple purchase/sale agreement, such as the stock agreement, are capped at the expectation damages, which is the $56,000 price agreed upon in the stock agreement that Jinsun expected to receive.[5] We agree. In *Quigley*'s summary of Texas breach of contract remedies quoted above, Judge Brister cited to *Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995), for the proposition that restitution damages, or quantum meruit recovery, "provides [the] 'amount of benefits conferred' on [the] defendant." *Quigley*, 227 S.W.3d at 56 n.4. *Murray* explains that quantum meruit typically is not available when there is an express contract:

> Generally, a party may not recover under quantum meruit when there is an express contract covering the services or materials furnished. *Truly v. Austin,* 744 S.W.2d 934, 936 (Tex. 1988). Construction contracts are an exception to this rule. It is undisputed that Murray has failed to substantially perform the Borden and Cooper jobs, a condition precedent to recovery under the express contract. *See Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex. 1990). Even though Murray may not recover under the express contract, Murray may bring an action in quantum meruit to recover the amount of benefits conferred by its partial performance on to Crest. *Id.* Additionally, because we find that Murray was entitled to recovery based on quantum meruit, the trial court's exclusion of unexecuted written contracts offered by Crest to prove the terms of the Borden and Cooper contracts was not harmful. *See* Tex. R. App. P. 81(b)(1).[6]

---

[5] Alidad also raises other arguments, which we decline to address. For instance, Alidad appears to challenge the factual finding undergirding the jury's larger sum award, but that argument is moot because we conclude that Jinsun is entitled only to the lower award, the agreed-upon price in the stock agreement.

[6] 900 S.W.2d at 345.

Here, the jury found that there was an express contract, the stock agreement, so under Texas law, Jinsun may not recover anything beyond its expectancy damages unless Jinsun shows that the stock agreement is an exception to the general rule. Jinsun has failed to do so. Here, Jinsun expected to receive $56,000 from Alidad in exchange for the block of Luxeyard stock. Whether the stock price went up or down following the stock transfer, Jinsun was entitled to receive $56,000 from Alidad—no more and no less. Its expectancy damages under the plain terms of the express contract are therefore $56,000—no more and no less.

As to Jinsun's argument that Alidad owed other obligations under the agreement, they are immaterial here. For one thing, Alidad's supposed obligations to increase the price of Luxeyard stock concern what would happen to the price of the Luxeyard stock that Jinsun retained, not the stock that Jinsun sold to Alidad. Assuming *arguendo* that Alidad did breach those obligations, Jinsun would have to prove those damages based on the value of the stock it retained, not the value of the stock it sold to Alidad for an agreed-upon price of $56,000. Once it sold that block of stock to Alidad, any gains and losses would go to Alidad, not Jinsun.

Indeed, Alidad argues that Jinsun is conflating the parties' two agreements and the damages owed under each. He notes that he and Jinsun entered into a second agreement for consulting ("the consulting agreement") in June 2012, under which Alidad agreed to raise funds for Luxeyard and Jinsun agreed to pay him a 10% commission on funds raised up to $5 million and to pay him a $150,000 commission advance. In addition to its findings on the stock agreement, the jury also found that Alidad had breached the consulting agreement and awarded $150,000 in damages for the commission advance Jinsun paid Alidad. Alidad contends that any promise he made to raise funds for Luxeyard was solely part of the consulting agreement and, accordingly,

damages for failure to perform this fundraising cannot be included in the damages for breach of the stock agreement.

We agree. As to the stock sale, Jinsun and Alidad entered into an express agreement under which Jinsun would sell the block of Luxeyard stock to Alidad for $56,000. The jury found that the stock agreement was valid and that Alidad had failed to pay. Therefore Jinsun is entitled to receive exactly what it was entitled to under the express contract: the $56,000 sale price. Jinsun is not entitled to restitution or reliance damages under the express contract.

Accordingly, the district court's final judgment is AFFIRMED.